# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| James T. Sutton,<br>2294 County Rd. 60<br>Bergholz, Ohio 43908,<br><br>on behalf of himself<br>and all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>APEX ENVIRONMENTAL, LLC,<br>c/o its Statutory Agent<br>Capitol Corporate Services, Inc.<br>4568 Mayfield Road, Suite 204<br>Cleveland, Ohio 44121<br><br>        Defendant. | Civil Action No.<br><br>Hon. |

## **CLASS ACTION COMPLAINT AND JURY DEMAND**

### **INTRODUCTION**

1. Plaintiff brings this class action against Defendant Apex Environmental LLC, which owns and operates the Apex Landfill located in both Jefferson County and Harrison County, Ohio. Through its operation, Defendant releases noxious odors that invade Plaintiff's property, causing property damage through negligence, gross negligence and nuisance.

### **PARTIES**

2. At all times relevant hereto, Plaintiff James T. Sutton has been a citizen of Ohio and has resided at 2294 County Rd. 60, Bergholz, Ohio.

3. Defendant Apex Environmental LLC. is a Delaware Corporation with its principal place of business located in Amsterdam, Ohio.

4. Defendant's landfill ("the Landfill") is located at 11 County Road 78, Amsterdam,

Ohio.

5. Upon information and belief, Defendant, including its predecessors and agents, either constructed or directed the construction of the landfill and exercised control and ownership over the landfill.

6. Defendant may be served with process through its agent Capitol Corporate Services, Inc., 4568 Mayfield Rd., Suite 204, Cleveland, Ohio 44121.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d).

8. There are 100 or more Class Members and the aggregate amount in controversy exceeds Five Million Dollars ($5,000,000.00) exclusive of interest and costs.

9. Plaintiff James T. Sutton is a citizen of Ohio, and Defendant is a citizen of Delaware.

10. Independent of and in addition to original jurisdiction under CAFA, this Court has original jurisdiction because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1).

11. The Court has personal jurisdiction over Defendant, who has at least minimum contacts with the State of Ohio because it regularly conducts substantial business in Ohio through the ownership and/or operation of the Landfill.

12. Defendant at all relevant times hereto conducted substantial business in this district, and many of the acts, occurrences and/or transactions alleged in this Complaint occurred in this District.

13. Venue in the United States District Court for the Southern District of Ohio is proper

because Defendant transacts business within this District and a substantial portion of the events giving rise to the claims at issue in this Complaint occurred in this District.

## GENERAL ALLEGATIONS

14. It has been reported that the Apex Landfill is the thirteenth largest landfill in the United States.

15. Defendant accepts an average of thousands of tons of waste per day, including but not limited to municipal solid waste, construction and demolition waste, and oil and gas waste for disposal at its landfill.

16. On March 21, 2017, Defendant received a permit for the vertical and lateral expansion of the Landfill that included an increase to its authorized maximum daily waste receipt.

17. Defendant is permitted to accept 10,000 tons of waste daily.

18. Materials deposited into Defendant's landfill decompose and generate (among other things) landfill gas, an odorous and offensive byproduct of decomposition which generally consists of hydrogen sulfide, methane, carbon dioxide, and various odorous compounds.

19. Landfill gas from landfills that contain construction and demolition debris can be especially odiferous given the high content of hydrogen sulfide, which is known to have a characteristic "rotten-egg" smell.

20. Plaintiff's property has been and continues to be physically invaded by noxious odors.

21. The noxious odors which entered Plaintiff's property originated from Defendant's landfill.

22. These odors caused by the Landfill have been and continue to be dispersed across all public and private land in the class area.

23. At all times relevant hereto, the Landfill has been managed and operated exclusively by Defendant.

24. A properly constructed, operated, and maintained landfill will collect, capture and destroy landfill gas from the landfill in order to prevent it from escaping into the ambient air as fugitive emissions.

25. Defendant is required to control its odorous emissions by, among other things, following proper landfilling practices, utilizing adequate landfill cover and covering practices, utilizing adequate lining and lining practices, limiting and/or pre-treating biosolid waste, and installing, operating, maintaining systems for the routing, capture, removal, and elimination of leachate and landfill gas.

26. Defendant has failed to sufficiently manage, collect, capture, and destroy landfill gas generated at its landfill to prevent fugitive emissions and to otherwise prevent odors from the landfill from invading the homes and property of Plaintiff and the Class.

27. Defendant has failed to adequately control its odorous emissions, in ways including but not limited to an inadequate landfill gas collection system; inadequate wellhead vacuum; inadequate monitoring; inadequate and/or improper cover and covering practices; inadequate and/or improper lining practices; inadequate collection and management of leachate; excessive intake of biosolids and sewage treatment sludge without adequate gas and leachate collection and extraction systems; excess intake of construction and demolition materials without adequate gas and leachate collection and extraction systems; and inadequate use of odor neutralizing systems and products.

28. The Landfill and its odorous emissions have been the subject of frequent complaints from residents in the nearby residential area.

29. Plaintiff James T. Sutton describes the odors as "very oppressive" and a "pungent odor like garbage, sewer and a little cheap perfume all mixed together." As a result of the odors from the landfill, he "can't sleep with windows open, no coffee on deck in morning."

30. More than 130 households have contacted Plaintiffs' counsel documenting the odors they attribute to the Defendant's landfill.

31. Below is a small sampling of the factual allegations made by putative class members to Plaintiffs' counsel, demonstrating that the Landfill is the source and cause of the odor emissions, which have caused damages to neighboring properties.

   a. On July 20, 2019, putative class member Emily Fogle from Amsterdam, Ohio reported that her household experiences "a rotten egg like odor." As a result, she reported that [w]e spend most of our time inside because of the odor."

   b. On June 24, 2019, putative class member Norman Gordon from Hopedale, Ohio described the smell from the Landfill as a "putrid strong odor smelling like a gas smell somewhat, decaying garbage." He reported that it is "so strong at times its woke me up middle of the night – all windows & doors shut. Smells if I'm driving as well with the windows up."

   c. On July 6, 2019, putative class member Wendy Goshorn from Amsterdam, Ohio reported that "most days it smells like rotten eggs." She further stated that, "[w]hen we purchased our home & acreage we put in a pond and many miles of trails throughout. Unfortunately, with the horrendous odors of the dump, we can no longer enjoy any of it. It is ridiculous. Can't open windows of our home & most days, it smells inside our home as well."

   d. On June 26, 2019, putative class member Everett Black Jr. from Amsterdam, Ohio reported that, "[n]o one wants to eat at a cook out when they smell something rotting. So we don't have very many."

   e. On July 3, 2019, putative class member James Blotner from Amsterdam, Ohio reported that he is "not able to sit on our porch without smelling garbage. We aren't able to open our windows to the house. We run our AC constantly to stay cool and avoid the smell."

   f. On June 24, 2019, putative class member Justin Harper from Bloomingdale, Ohio reported that the "rotten egg smell" from the Landfill "[l]imits outside activities & chores, limits having house windows open, even when windows

     are shut on cold days odors seep into house in early morning & I wake up with an upset stomach."

 g. On July 10, 2019, putative class members Richard and Judy Hendrix from Amsterdam, Ohio reported that "[t]he smell is so bad that it makes us nauseous. It is a very distinctive odor that permeates into our garage and then into our house. It smells like rotten, rotten, rotten food and nauseating gas. We are unable to plan picnics or parties without the fear of the stench chasing us indoors. We can't even open the windows and are forced to use our air conditioner all the time. We used to like to sit on our front porch & watch the sunset – now we watch the dump grow."

 h. On June 25, 2019, putative class members Gary and Dorothy Luzier from Hopedale, Ohio reported that they "[c]an not sit outside because of the smell can't open windows for 'fresh' air can not plan family gatherings can not open the windows in the car."

 i. On July 12, 2019, putative class member William Morris from Jewett, Ohio reported a "propane, rotten eggs" smell that prevents his household from going outside and opening windows and "will make you want to vomit."

32. Defendant's well documented pattern of failing to control its emissions is further demonstrated by the following:

 a. Defendant's numerous citations by the Jefferson County Health Department (JCHD) for violations of Ohio Law relating to its operation and maintenance of the Landfill, including in 2018 and 2019 for, *inter alia*, issues relating to inadequate daily cover; excessive working faces; inadequate spreading of waste; inadequate compacting of waste; excessive exposed waste; excessive spreading litter; excessive leachate; inadequate pumping of leachate; inadequate surface water ditches; uncontained leachate outbreaks; exposed leachate; improper ponding of water; and lack of adequate equipment;

 b. Numerous and repeated resident complaints to Defendant and to state and local authorities, including, among many others, dozens of odor complaints to the JCHD in June 2019 and dozens more in July 2019.

33. The Landfill has emitted, and continues to emit, objectionable odors that are detectable outside the bounds of its property.

34. The Landfill has emitted objectionable odors that have caused negative impacts to its neighbors.

35. Plaintiffs and members of the putative class suffer from physical discomfort because of Defendant's noxious odors, including but not limited to nausea, stomach aches, difficulty breathing, and headaches.

36. The foul odors emitted from the Landfill are offensive, would be offensive to a reasonable person of ordinary health and sensibilities, and have caused property damage, including by interfering with the ability of Plaintiffs and the Class to use and enjoy their homes and property.

37. The Class Area is home to a wide range of commercial and recreational activities, including but not limited to agriculture, transportation, warehousing, retail trade, health care and social services, construction, mining, manufacturing, educational services, and dining.

38. Plaintiffs are a limited subset of individuals in Jefferson and Harrison Counties, and the Class Area, that includes only owner/occupants and renters of residential property who live within the Class Area and fit within the Class Definition. *See*, infra, at ¶ 42.

39. Members the public, including but not limited to businesses, employees, commuters, tourists, visitors, customers, clients, students, and patients, have experienced and been harmed by the fugitive noxious odors emitted from the Landfill into public spaces; however, unlike Plaintiffs and the Class, members of the public who are outside of the Class Definition have not suffered damages of the same kind, in the form of diminished property values and/or loss of use and enjoyment of their private property.

40. The invasion of Plaintiff's property and that of the Class by noxious odors has reduced the value of that property and has interfered with the use and enjoyment of that property, resulting in damages in excess of $5,000,000.00.

41. Defendant knowingly, negligently, intentionally, recklessly, willfully, and grossly failed to properly construct, repair, maintain and/or operate its landfill, and caused the invasion of

Plaintiff's property by noxious odors on frequent, intermittent and ongoing reoccurring occasions.

## CLASS ALLEGATIONS

### A. Definition of the Class

42. Plaintiffs bring this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to Federal Rule of Civil Procedure 23. Plaintiffs seek to represent a Class of persons preliminarily defined as:

> **All owner/occupants and renters of residential property residing within four (4) miles of the landfill's property boundary.**

The definitional boundary is subject to modification as discovery will disclose the location of all persons properly included in the Class ("Class Members"). Plaintiffs reserve the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

43. This case is properly maintainable as a class action pursuant to and in accordance with Rule 23(a) of the Federal Rules of Civil Procedure in that:

    a. The class, which includes thousands of members, is so numerous that joinder of all members is impracticable;

    b. There are substantial questions of law and fact common to the class including those set forth in greater particularity herein;

    c. Questions of law and fact such as those enumerated below, which are all common to the class, predominate over any questions of law or fact affecting only individual members of the class;

    d. The claims of the representative parties are typical of the claims of the class;

    e. A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

    f. The relief sought in this class action will effectively and efficiently provide relief to all members of the class;

    g. There are no unusual difficulties foreseen in the management of this class action; and

  h. Plaintiff, whose claims are typical of those of the Class, through her experienced counsel, will zealously and adequately represent the Class.

**B. Numerosity**

44. The Class consists of more than one thousand members and therefore is so numerous that joinder is impracticable.

**C. Commonality**

45. Numerous common questions of law and fact predominate over any individual questions affecting Class Members, including, but not limited to the following:

  a. whether and how Defendant intentionally, recklessly, willfully, wantonly, maliciously, grossly and negligently failed to construct, maintain and operate the landfill;

  b. whether Defendant owed any duties to Plaintiffs;

  c. which duties Defendant owed to Plaintiffs;

  d. which steps Defendant has and has not taken in order to control the emission of noxious odors through the construction, maintenance and operation of its landfill;

  e. whether and to what extent the landfill's noxious odors were dispersed over the class area;

  f. whether it was reasonably foreseeable that Defendant's failure to properly construct, maintain and operate the landfill would result in an invasion of Plaintiffs' property interests;

  g. whether the degree of harm suffered by Plaintiff and the class constitutes a substantial annoyance or interference; and

  h. the proper measure of damages incurred by Plaintiff and the Class.

**D. Typicality**

46. Plaintiff has the same interests in this matter as all the other members of the Class and her claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of many of the same material

and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories and seek the same type of relief.

47. The claims of Plaintiff and the other Class Members have a common cause and their damages are of the same type. The claims originate from the same failure of the Defendant to properly construct, repair, maintain and operate the landfill.

48. All Class Members have suffered injury in fact as a result of the invasion of their property by Defendant's release of noxious odors, causing damage to their property.

E.  **Adequacy of Representation**

49. Plaintiff's claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class' claims will be prosecuted with diligence and care by Plaintiff as representative of the Class. Plaintiff will fairly and adequately represent the interests of the Class and does not have interests adverse to the Class.

50. Plaintiff has retained the services of counsel who are experienced in complex class action litigation and in particular class actions stemming from invasions of landfill emissions. Plaintiff's counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiff and all absent Class Members.

F.  **Class Treatment Is the Superior Method of Adjudication**

51. A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

    a.    Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

    b.    Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

c. The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and

d. The proposed class action is manageable.

52. The prosecution of separate actions by or against individual members of the Class would create the risk of (i) inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for the party opposing the Class; and (ii) adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

53. Notice can be provided to members of the Class by U.S. Mail and/or publication.

## I. CAUSE OF ACTION ONE

### NUISANCE

54. Plaintiff restates the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

55. The noxious odors which entered Plaintiff's property originated from Defendant's landfill.

56. By failing to reasonably construct, operate, repair and maintain its landfill, Defendant has negligently created an unreasonable risk of harm by causing the invasion of Plaintiff's property by noxious odors.

57. The noxious odors invading Plaintiffs' property are indecent and offensive to the senses of Plaintiffs and individuals with ordinary sensibilities and obstruct the free use of Plaintiffs' property so as to substantially and unreasonably interfere with the comfortable enjoyment of life and property.

58. Defendant owed and continue to owe a duty to the public to prevent and abate the

interference with, and the invasion of, the free use and enjoyment of public spaces.

59. Defendant owed and continue to owe a duty to Plaintiffs to prevent and abate the interference with, and the invasion of, the private interests of the Plaintiffs.

60. As a foreseeable, direct and proximate result of the foregoing conduct of Defendant, Plaintiffs suffered damages to their property as alleged herein.

61. By causing noxious odors that physically invade Plaintiff's property, Defendant knowingly, negligently, intentionally, recklessly, willfully, grossly, and with a conscious disregard for the rights of Plaintiff, created a nuisance which substantially and unreasonably interfered with Plaintiffs' use and enjoyment of their property. Such substantial and unreasonable interference includes, but is not limited to:

    a.     loss of use and ability to enjoy the outside areas of Plaintiff's property or to open windows due to the presence of noxious odors;

    b.     decrease in the value of Plaintiff's property; and

    c.     annoyance, inconvenience, and physical discomfort, including but not limited to, being woken up in the middle of the night by noxious odors, the physical discomfort and accompanying symptoms of enduring noxious odors, and the inability to invite guests to Plaintiff's residence due to the embarrassment and annoyance of the noxious odors invade Plaintiff's property.

62. Apart from the property damage incurred by Plaintiffs and the Class, Defendant's emissions have substantially interfered with rights common to the general public, including the right to uncontaminated and/or unpolluted air.

63. Plaintiff suffered and continues to suffer special harm relating to the use and enjoyment of their land and property, and decreased property values—damages of a different kind that are additional to those suffered by the public at-large.

64. Plaintiff did not consent to noxious odors to enter upon their property.

65. Whatever social utility provided by the Landfill is clearly outweighed by the harm

suffered by Plaintiffs and the putative class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have been forced to endure substantial loss in the value of their properties.

66. Defendant's substantial and unreasonable interference with Plaintiff's property rights constitutes a nuisance for which Defendant is liable to Plaintiff for all damages arising from such nuisance, including compensatory, exemplary and/or punitive relief.

## II. CAUSE OF ACTION TWO

### NEGLIGENCE AND GROSS NEGLIGENCE

67. Plaintiff restates the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

68. On occasions too numerous to mention, Defendant negligently and improperly constructed, operated and/or maintained its landfill, causing fugitive emissions to escape and invade Plaintiff's home, land, and property.

69. Defendant owed Plaintiff, as a neighboring landowner, a duty of care with regard to its operation and maintenance of the Landfill.

70. As a direct, proximate, and foreseeable result of Defendant's negligence and gross negligence in constructing, operating, and/or maintaining the Landfill, Plaintiff's property, on occasions too numerous to mention, was physically invaded by noxious odors.

71. As a further direct, proximate, and foreseeable result of the foregoing conduct of Defendant, Plaintiff suffered damages to her property as alleged herein. Such damages include, but are not limited to, the loss of use and enjoyment of Plaintiff's property and diminution in the value of Plaintiff's property.

72. By failing to properly construct, maintain and/or operate its landfill, Defendant

failed to exercise its duty of ordinary care and diligence so that noxious odors would not invade Plaintiff's property.

73. By failing to construct, maintain and/or operate its landfill, Defendant has caused the invasion of Plaintiff's property by noxious odors.

74. Defendant knowingly breached its duty to exercise ordinary care and diligence when it improperly constructed, maintained and/or operated its landfill and knew, or should have known upon reasonable inspection that such actions would cause Plaintiff's property to be invaded by noxious odors. As a direct and proximate result of the failure of Defendant to exercise ordinary care, Plaintiff's residence has been and continues to be physically invaded by noxious odors.

75. Defendant's conduct in knowingly allowing conditions to exist, which caused noxious odors to physically invade Plaintiff's property, constitutes gross negligence as it demonstrates a conscious disregard for Plaintiff's rights and safety.

76. There was a great probability that substantial harm would result from Defendant's acts and omissions in constructing, operating, and maintaining the Landfill.

77. Defendant's gross negligence was malicious and made with a conscious disregard for the rights and safety of Plaintiff, which entitles Plaintiff to an award of compensatory, exemplary, and punitive relief.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for judgment as follows:

A. Certification of the proposed Class pursuant to Federal Rule of Civil Procedure 23;

B. Designation of Plaintiff as representative of the proposed Class and designation of his counsel as Class Counsel;

C. Judgment in favor of Plaintiff and the Class Members and against Defendant;

D. An award, to Plaintiff and the Class, of compensatory and punitive damages and attorneys' fees and costs, including pre-judgment and post-judgment interest thereupon;

E. An Order holding that entrance of the aforementioned noxious odors upon Plaintiffs' property constituted a nuisance;

F. An award to Plaintiff and the Class Members of injunctive relief not inconsistent with Defendant's state and federal regulatory obligations; and

G. Such further relief both general and specific as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Dated: October __, 2019

Respectfully submitted,

*s/Daniel P. Petrov*
Daniel P. Petrov
Thorman Petrov Group Co., LPA
50 E. Washington St.
Cleveland, OH 44022
Tel: 216.621.3500 | Fax: 216.621.3422
dpetrov@tpgfirm.com

Steven D. Liddle*
Laura L. Sheets*
Matthew Z. Robb
*Pro Hac Vice Motions to be Submitted*
**LIDDLE & DUBIN PC**
975 E. Jefferson Avenue
Detroit, Michigan 48207-3101
Tel: (313) 392-0015/Fax: (313) (313) 392-0025
sliddle@ldclassaction.com
ncoulson@ldclassaction.com
mrobb@ldclassaction.com

*Attorneys for Plaintiff and the putative Class*